**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LIQUID MANNA, LLC | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | CIVIL ACTION NO  5:14 - CV -01123 |
| | § | |
| GLN GLOBAL LIGHT NETWORK, | § | |
| and DAVID DARTEZ | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Liquid Manna, LLC ("Plaintiff") files this complaint against GLN Global Light Network, LLC and David Dartez ("Defendants"), and states as follows:

**NATURE AND BASIS OF THE ACTION**

1.    Plaintiff Liquid Manna, LLC brings this action against Defendants to remedy damages and harm to Plaintiff resulting from Defendants' infringement of Plaintiff's trademark.  Defendants are marketing counterfeit oxygen water and gel products and they are intentionally confusing the consuming public as to the affiliation, source and/or quality of other products.  Despite Plaintiff's request that Defendants cease the acts of infringement and unfair competition, Defendants continued and still continue willfully and without permission to use Plaintiff's trademark to deceive the public.

2.    This is an action for trademark infringement; false designation of origin and advertising; trademark dilution; unfair competition; counterfeiting; misappropriation; theft; injury to business reputation, trade name, and trademark; business disparagement;

1

and interference with prospective business relations. This action arises under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1051, et seq., and the common and statutory law of the State of Texas.

3.      This action arises under the Lanham Act, 15 U.S.C. § 1125(a), the Texas Business and Commerce Code § 16.29, and the common law of Texas.  All trademark claims relate to U.S. Trademark No. 4,339,113 (the "Liquid Manna Mark").  Exhibit A.  Plaintiff, as an asignee, has all rights to the Liquid Manna Mark.  Exhibit B.

**PARTIES**

4.      Plaintiff is a Texas limited liability company with a principal place of business in Scottsville, Texas.

5.      Defendant GLN Global Light Network, LLC ("GLN") is a Texas limited liability company with a principal place of business at 23505 Bat Cave Rd, San Antonio, Texas, 78266.  It may be served through its registered agent for service of process, CLM Cosmic Light Mission, LLC, located at 17460 IH N. STE 160 #357, Schertz, TX 78154.

6.      Defendant David Dartez ("Dartez") is an individual and resident of Texas.  He may be served with process at his residence, 23505 Bat Cave Rd, San Antonio, Texas, 78266.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action under 35 U.S.C § 271 et seq. and 28 U.S.C. § 1331 (actions arising under the laws of the United States), 28 U.S.C. § 1338(a) (actions relating to patents and trademarks), and 28 U.S.C. § 1338(b) (claims of unfair competition when joined with a substantial and related claim under patent or trademark laws).  This Court also has supplemental jurisdiction over other claims herein

that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Defendants based upon their contacts with this forum; Defendant GLN is a Texas limited liability company and has its principal place of business is in Texas, and Defendant Dartez is a resident of Texas.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 because Defnedants committed the unlawful acts complained of in this judicial district and Defendants reside in this judicial district.


**FACTUAL BACKGROUND**

*A.*      *The Development of Liquid Manna*

10.      In approximately 2004, Fred Neal, Jr., deceased, ("Neal") developed a proprietary method for creating what he described as "supersaturated oxygen" water. Neal began marketing the water as having intended health benefits, and he sold it both directly and through distributors under the brand name "Liquid Manna." The water came in standard size water bottles.

11.      In connection with branding his Liquid Manna products, Neal also extensively used the terms "Royal" and "Regal." Neal's oxygen water product was and is often referred to by consumers as "Regal Liquid Manna." Together, the Liquid Manna Mark with the other marks are referred to herein as the Liquid Manna Marks.

12.      As a result of its longstanding, widespread, extensive and continuous use, Liquid Manna enjoys well-established and exclusive rights in and to the Liquid Marks, which identify and distinguish the goods of Plaintiff from the goods of others. The Liquid Manna Marks symbolize the goodwill earned by Plaintiff in its provision of quality products. As a

3

result, the Liquid Manna Marks are highly valuable to Plaintiff.

13.    In May 2013, Neal obtained a U.S. Federal Trademark for the phrase "Liquid Manna," Trademark No. 4,339,113. Exhibit A. The mark is for "Oxygen Enhanced Water." *Id.* Long before 2013, Neal used the terms "Liquid Manna", "Royal" and "Regal" continuously and extensively to market and sell his oxygenated water and related products.

14.    One of the largest distributors of Liquid Manna products was Defendant GLN, which is owned and operated by Defendant Dartez.

15.    Defendants have claimed to have as many as 12,000 customers that they sell products to.  Defendants marketed the Liquid Manna products worldwide, primarily through their websites: www.globallight.net and www.globallightaustralia.com.

16.    Neal and Dartez developed a friendly relationship through their business transactions.  Neal's daughter suggested that since customers often used the water externally, that oxygen enahnced "pads" might be a useful product.  This suggestion was made in Dartez's presence and, ultimately, he and Neal collaborated to develop and produce Liquid Manna gel pads.  These pads were, like all true Liquid Manna products, made with Neal's proprietary technology.

17.    The gel pads contained  oxygen-enhanced gel that Neal created using a proprietary process – the same one he used for his Regal Liquid Manna product.

18.    Importantly, Neal never shared the proprietary process with Dartez.

19.    These gel pads were sold by Defendants and carried the "Liquid Manna" name. A "royalty" or "comission" agreement was entered into whereby Defendants would pay Neal 10% of proceeds from every sale of the Liquid Manna gel pads.

20.    Defendants still owe many thousands of dollars in royalties for authentic Liquid

Manna gel pads that Neal delievered to Defendants and that Defendants eventually sold.

21.     Additionally, Defendants received shipments of Liquid Manna water bottles but have failed to fully pay for them.

*B.*     *Neal's Death and the Aftermath*

22.     Neal died on June 1, 2014.  He left his estate to his children, Sherrie Shields and David Neal.  David Neal is the Independent Executor of the Estate of the Estate of Fred Neal, Jr.  Exhibit C.

23.     Sherrie Shields and David Neal are the rightful heirs and owners of the proprietary technology used to make Liquid Manna products, including Regal Liquid Manna, Liquid Manna Gel pads, and others.

24.     Neal's children have continued to operate the Liquid Manna business since their father's death.  They sell the oxygen-enhanced water and gel pads and market them under the Liquid Manna brand.

25.     Upon Neal's death, Defendants circulated newsletters to the public (and specifically to the target customer group) that conained false and disparaging information about the future abailability of Liquid Manna water and gel pad products.

26.     Specifically, Defendants made the following false statements:

     a.  that Neal had not shared the proprietary technology used to create the supersaturated oxygen water with anyone;

     b.  that Liquid Manna would no longer be sold by anyone;  and

     c.  that Neal "taught" Defendants how to "charge" the gel pads before his death and that Defendants were capable of re-producing the pads;

27.     These claims were very damaging to Plaintiff's business because the public's

perception of the Liquid Manner water products is based in large part on the secret, proprietary oxygen "charing" process that Neal invented.

28.     After thesse false and disparaging statements were made, Sherrie Shields informed Defendants that she and her brother, David, posessed Neal's proprietary apparatus to create Liquid Manna products and intended to continue manufacturing and selling the products under the Liquid Manna brand.

29.     Defendants continued to publish false statements in GLN's newsletter.  For example, on June 12, 2014, Defendants claimed or implied there was a limited amount of Liquid Manna stock left to sell in the world.   Defendants further stated that Global Light Network had chosen to move away from Liquid Manna, when in fact the opposite was true.

C.     *Defendants' About-face*

30.     Faced with the possibility of direct competion from Neal's children, Defendants began changing their story.  They began claiming that they could produce the same product as Plaintiff through use of the same proprietary process.

31.     On June 19, 2014, Defendants published a newsletter stating, falsely, that Neal had, in fact, taught Dartez the proprietary technology to enhance the water and gel pads.

32.     On another website still operated by Defendants (www.productsknowledge.info), Defendants have unwittingly admitted the truth: they do not know Neal's proprietary proces.  The pertinent portion from that website is below:

> *"The developer of the Rad-D-Tox, Fred Neal, has verified to his satisfaction that the Rad-D-Tox will remediate all of the various radiation that we experience in life, like EMF's from computers, televisions, microwaves, cell phones, dental and other x-rays and MRI's. All of this is in addition to radioactive fallout from Fukushima and other nuclear situations.*

6

....

> *I must, however, indicate that Fred's technology is proprietary and not even I have knowledge of its details. He uses the same basic technology that he uses to make the incredible Liquid Manna. We have complete confidence in his technology and his integrity. However, when he says that he remediates all of those different forms of radiation, we must take his word for it because we have not yet developed ways to independently validate his work and his findings.*

(emphasis added).   Upon information and belief, these statements were written by Defendant Dartez.

33.   Thus, though Defendants have admitted that they do not know Neal's proprietary process, they continue to sell products that they claim are made with that process. Moreover, they continue to employ the marks that Neal used, including both the Federally trademarked "Liquid Manna Mark" and the common-law mark "Regal."

34.   To this day, Defendants, without authorization or license, continue to use the trademarked term "Liquid Manna ™ logo" on their website in connection with products that Defendants manufacture and that are deceptively similar to products manufactured and distributed by (or authorized by) Plaintiff.   These are counterfeit products.

35.   Upon information and belief, Defendants have misrepresented both verbally to customers or potential customers and in print that they sell genuine Liquid Manna products or products made with Neal's proprietary process.

36.   Furthermore, on October 9, 2014, Defendants announced the release of a new product, using the name "Regal."   This is a mark that is so associated with Neal's products that it has acquired secondary meaning, especially in the realm of super-oxygenated water products.

37.     Defendants sell an oxygen enhanced water product that uses the the word "Regal" as its principal mark, just as Neal's "Regal Liquid Manna" did.  That product is Defendants' "Regal Plus Oxygen Enhanced Water."

38.     Defendants have extended their misleading advertising to other products that were associated with Neal and his proprietary technology.  This includes Defendants' product called "Rad-D-Tox."

39.     Defendants continually refer to a "proprietary" process by which they purportedly make their similar products, but, in context, these statemetns can only refer to one "proprietary process": Fred Neal's.

40.     As   noted   above,   Defendants   also   operate   a   website   called http://www.productsknowledge.info/.  There, Defendants purport to describe the qualities and characteristics of the products they distribute.

41.     There, Defendants are using Neal's name and proprietary process to sell other products too, such as a product called "Rad-D-Tox."  For example, Defendants state in connection with the Rad-D-Tox product: *"Subsequent to the announcement of Essence of Iodine, <u>Fred [Neal]</u> upgraded the essence to include protection from other types of radiation."*

42.     Again, since Neal did not share his proprietary process with Defendants and since Defendants are not selling authorized products by Liquid Manna, these statements are, at a minimum, misleading and confusing to the public.

8

## COUNT I

## <u>False Advertising Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125</u>

43.     Plaintiff realleges and incorporates paragraphs 1 to 42 as if fully set forth herein.

44.     Defendants' statements on the GLN website and/or online newsletters are false and/or misleading representations of fact about Plaintiff and its products.

45.     Defendants' statements on the GLN website and/or online newsletters appeared and continue to appear in interstate commerce including on the internet. The foregoing acts of Defendants deceived, or had the capacity to deceive, a substantial segment of potential consumers.

46.     The foregoing acts of Defendants are likely to influence consumer purchasing

47.     decisions.

48.     Plaintiff's enhanced water products are in interstate commerce through an internet presence and sales throughout the United States.

49.     Plaintiff has been and is likely to be injured (both economic and reputational) as a result of Defendants' false and/or misleading representations.

50.     Defendants' actions constitute false advertising in violation of § 43(a) of the Lanham Act.

51.     Defendants' unlawful acts have caused great and irreparable injury to Plaintiff, and will continue to irreparably harm Liquid Manna unless enjoined.

52.     Defendants' acts have been willful and deliberate justifying an award of attorney fees.

53.     Upon information and belief, Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have

caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT II

### False Association Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125

54.     Plaintiff realleges and incorporates paragraphs 1 to 53 as if fully set forth herein.

55.     With respect to Defendants' marketing and sale of "Rad-D-Tox," "Regal Plus Oxygen Water" and "Regal Pads",  Defendants' statements on their websites, globallight.net and productsknowledge.info (and/or online newsletters) are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' products.

56.     Defendants' statements appeared and continue to appear in interstate commerce including on the internet.

57.     The foregoing acts of Defendants deceived, or had the capacity to deceive, a substantial segment of potential consumers.

58.     The foregoing acts of Defendants are likely to influence consumer purchasing decisions.

59.     Plaintiff, along with Plaintiff's entire line of enhanced water products, are in interstate commerce through an internet presence and sales throughout the United States.

60.     Plaintiff has been and is likely to be injured (both economic and reputational) as a result of Defendants' false and/or misleading representations.

61.     Defendants' actions constitute false association in violation of § 43(a) of the Lanham Act.

62.     Defendants' unlawful acts have caused irreparable injury to Plaintiff, and will continue to irreparably harm Plaintiff unless enjoined.

63.     Defendants' acts have been willful and deliberate justifying an award of attorney fees.

64.     Upon information and belief, Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT III

### Injury to Business Reputation and Trademark Dilution
### Under Tex. Bus. & Com. Code § 16.29

65.     Plaintiff realleges and incorporates paragraphs 1 to 64 as if fully set forth herein.

66.     Defendants' false, misleading, and deceptive statements on their websites and/or online newsletters, as identified above, have resulted in dilution of the distinctive quality of Plaintiff's Liquid Manna Mark and common-law Regal mark, and have likely tarnished or misappropriated the goodwill and reputation associated with the Liquid Manna brand.

67.     Defendants' acts constitute a violation of Texas Business and Commercial Code § 16.29 for injury to Plaintiff's business reputation and trademark dilution.

68.     Defendants' acts have caused irreparable injury to Plaintiff, and will continue to irreparably harm Plaintiff unless enjoined.

69.     Defendants' acts have been willful and deliberate justifying an award of attorney fees.

## COUNT IV

## Texas Common Law Business Disparagement

70.     Plaintiff realleges and incorporates paragraphs 1 to 69 as if fully set forth herein.

Defendants' statements on their websites and/or online newsletters are false and disparage

Plaintiff by implying that Plaintiff was no longer producing its enhanced water products,

and/or that Plaintiff was not producing its enhanced water products to the same standard

as before Neal's death. Specifically, the statements on Defendants' website and/or online

newsletters, as described in above, are false and disparage Plaintiff by stating that Plaintiff

would be discontinued, and then stating that Plaintiff would be continuing production

under different management, and that GLN was distancing itself from Plaintiff for such

reasons.

71.     Upon information and belief, Defendants published statements on their websites

and/or online newsletters with knowledge that they were false, with reckless disregard

about the statements' truth, or with ill will or intent to interfere with Plaintiff's economic

interest. Specifically, as alleged above, Defendants now compete with Plaintiff in the

enhanced water products industry and, through their numerous years in the business

working with Plaintiff's founder, Defendants are familiar with how Plaintiff conducts

business. Through Defendants' familiarity with Plaintiff's business, they knows how

important the integrity of Plaintiff's brand is to the sustainability of its business, and

Defendants know that negative public perceptions with respect to the integrity of Plaintiff's

products would have a detrimental business and economic impact on Plaintiff. As such,

upon information and belief, to unfairly gain a competitive advantage, Defendants intended

to interfere with Plaintiff's economic and business interest with the statements made on

Defendants' websites and/or online newsletters.

72.     Upon information and belief, Defendants were not privileged to publish the false and disparaging information about Plaintiff and/or Neal.

73.     Defendants' acts have specifically damaged and will continue to damage Plaintiff. Defendants' acts have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial. Defendants' acts have cost Plaintiff customers, and Defendants' acts continue to affect the perceived impurity of Plaintiff's products manufactured after Neal's death, which has resulted, lost sales.

74.     Defendants' acts constitute business disparagement under Texas common law.

## COUNT V

## **Defamation**

75.     Plaintiff realleges and incorporates paragraphs 1 to 74 as if fully set forth herein.

76.     Defendants' websites and/or online newsletters are publications. They are available cost-free to the public online.

77.     In addition, because the defamatory statements concern a private issue, and not a public issue, falsity is presumed and Defendants must plead and prove truth as an affirmative defense.

78.     For the reasons herein, Defendants' representations are defamatory about Plaintiff. Such statements fall within the scope of statutory libel, as they impeach the reputation of Plaintiff by falsely calling into question the performance and reliability of Plaintiff's enhanced water products and the proprietary process.

79.     Defendants knew of the falsity of the representations or published the statementswith reckless disregard of whether the representations were false or not.

Moreover, upon information and belief, Defendants knew or strongly suspected the newsletter statements on globallight.net would present a false or defamatory impression of the continued production of Plaintiff products following Mr. Neal's death at least because Defendants knew there was a high likelihood that potential customers of Plaintiff would falsely believe Defendants' statemetns.

80.    Defendants' actions constitute defamation under Texas common law and statutory law.

## COUNT VI

## <u>Common Law Unfair Competition</u>

81.    Plaintiff realleges and incorporates paragraphs 1 to 80 as if fully set forth herein.

82.    Upon information and belief, Defendants' willful, intentional and illegal acts, as alleged in this Complaint, have interfered and will interfere with Plaintiff's ability to conduct its business, and constitutes unfair competition at common law.

83.    As a result of Defendants' willful, intentional and illegal acts, Plaintiff has suffered commercial damage for which Plaintiff may recover. In addition, Defendants' actions warrant the imposition of exemplary damages because, upon information and belief, they were willful, intentional and performed with malice.

**COUNT VII**

**Federal Trademark Dilution Under § 43(a) of the Lanham Act, 15 U.S.C. §**

**1125**

84.    Plaintiff realleges and incorporates paragraphs 1 to 83 as if fully set forth herein.

85.    Plaintiff's Liquid Manna Mark is strong, highly distinctive, and famous, and achieved such fame before Defendants' unauthorized use of the Liquid Manna mark in its online product descriptions, images, and advertisements by using a similar font and packaging aesthetics, as is shown below.





86.     Defendants' use and alteration of such marks are likely to dilute the distinctive quality of the Liquid Manna Mark.

87.     Defendants' use of the Liquid Manna Mark constitutes commercial use in interstate commerce.

88.     Defendants' actions constitute willful dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). 56.   Defendants' unlawful acts have caused Plaintiff irreparable harm and will continue to irreparably harm Plaintiff unless enjoined.

89.     Upon information and belief, Defendants' have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT VIII

### Trademark Infringement Under § 32 of the Lanham Act, 15 U.S.C. § 1114 (The Liquid Manna Mark)

90.     Plaintiff realleges and incorporates paragraphs 1 to 89 as if fully set forth herein.

91.     As described above, Plaintiff has the exclusive right to use the distinctive and federally registered LIQUID MANNA trademark.

92.     Plaintiff's exclusive use in commerce of the LIQUID MANNA trademark predates any use by Defendants of the LIQUID MANNA trademark.

93.     Upon information and belief, Defendants' conduct is willful and intentional and intended to disparage the goodwill associated with the LIQUID MANNA trademark. Defendants are and were at all relevant times both actually and constructively aware of Plaintiff's prior use, license, and registration, and Defendants' conduct is therefore also willful and intentional.

94.     Defendants use the LIQUID MANNA trademark in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods.

95.     Defendants' use in commerce of the LIQUID MANNA trademark, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114 in that it is without Plaintiff's consent and is likely to cause confusion, mistake, and/or deception among consumers. Such conduct has and will irreparably harm Plaintiff and the goodwill it has developed in its trademarks.

96.     As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1114, Plaintiff has been and will continue to be damaged.

97.     Upon information and belief, Defendants have realized, and continue to realize,

substantial revenues, profits, and other benefits rightfully belonging to Plaintiff as a result of its wrongful conduct.

98.    Defendants' conduct is causing and will continue to cause Plaintiff to suffer irreparable harm and, unless Defendants are restrained, Plaintiff will continue to be so damaged, because it has no adequate remedy at law.

## COUNT IX

### Common Law Trademark Infringement

99.    Plaintiff realleges and incorporates paragraphs 1 to 98 as if fully set forth herein.

100.    Since Plaintiff adopted and used the "Regal" and "Royal" marks to identify its enhanced water products and has continuously used these marks.  Plaintiff's "Regal" and "Royal" marks have become distinctive of the integrity and quality of its goods and services.

101.    On information and belief, Defendants have been using the marks "Regal" and "Royal", or a similar variation, associated with Defendants' products.  Defendants' use was intended to mislead the public and lead to confusion and mistake.

102.    Defendants' actions as set forth above constitute common law trademark infringement under the laws of the State of Texas.

### COUNT X

### Common Law Unjust Enrichment

103.    Plaintiff realleges and incorporates paragraphs 1 to 102 as if fully set forth herein.

104.    By reason of the foregoing, Defendants have unjustly enriched themselves, and continue to do so, in an unknown amount, and Plaintiff is entitled to just compensation under the common law of the State of Texas.

18

## COUNT XI

### TRADEMARK COUNTERFEITING IN VIOLATION OF THE LANHAM ACT

105.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 104 above, inclusive, and incorporates them by reference herein.

106.    Defendants' acts described above constitute trademark counterfeiting and infringement under the Lanham Act.

107.    Defendants have infringed and continue to infringe Plaintiff's registered trademarks in violation of 15U.S.C.§II14(1)(a) as alleged above.

## COUNT XII

### Injuries and Damages; Irreparable Harm

108.    Plaintiff has been damaged by the foregoing acts of Defendants in at least the following respects:

   a. Plaintiff has lost profits;

   b. Plaintiff has lost valuable goodwill;

   c. GLN has obtained unjust enrichment;

   d. Plaintiff has incurred expenses in counteracting the effect of Defendants' use of Plaintiff's trademarks;

   e. Defendants' adoption and use of confusingly similar marks was willful and deliberate;

   f. Unless Defendants' are enjoined from the acts complained of, Plaintiff and the public will suffer irreparable harm, for which Plaintiff has no adequate remedy at law.

## **PRAYER**

Plaintiff respectfully requests a judgment against Defendants as follows:

    A.  In favor of Plaintiff and against Defendants on all of Plaintiff's claims;

    B.  Defendants be ordered to immediately terminate any further dissemination and displaying of the materials complained of herein;

    C.  Defendants, their officers, agents, servants, employees, attorneys and all others in active concert or participation with Defendants, be enjoined and restrained permanently from:

        a.  Disseminating, displaying, or otherwise distributing or causing to be displayed the statements complained of herein or otherwise insinuating that Plaintiff products (actual Plaintiff products sold by Plaintiff) differ from the products created before Mr. Neal died;

        b.  Using the mark LIQUID MANNA, the "Regal" mark, or the "Royal" mark, or any variations or derivatives thereof, in commerce;

        c.  Unfairly competing with Plaintiff in any manner whatsoever;

        d.  Causing likelihood of injury to Plaintiff's business reputation; and

    D.  Committing any other act or making any other statement that constitutes an act of unjust enrichment;

    E.  Defendants be ordered to file with this Court and serve on Plaintiff within thirty (30) days after service of such injunction, a written report under oath pursuant to 15 U.S.C. 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction;

F.   That Defendants account for and pay over to Plaintiff their profits and all damages sustained by Plaintiff, purusant to 15 U.S.C. 1117(a)

G.   Actual damages and exemplary damages (including treble damages, pursuant to 15 U.S.C. 1117(b)

H.   Statutory damages pursuant to 15 U.S.C. 1117(c), and

I.   An award to Plaintiff of its costs and attorneys' fees incurred in this action; and

J.   Further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Jeffrey Taylor
JEFFREY TAYLOR
Texas Bar No:  24042011

301 Congress, Suite 1050
Austin, TX 78701
(512) 814-6770
(512) 368-9014 FAX

**ATTORNEY FOR PLAINTIFF**

Exhibit A

# United States of America
## United States Patent and Trademark Office

# Liquid Manna

**Reg. No. 4,339,113**
**Registered May 21, 2013**

NEAL, FRED (UNITED STATES INDIVIDUAL)
2578 FM 2199 SOUTH
MARSHALL, TX 75672

**Int. Cl.: 32**

FOR: OXYGEN ENHANCED WATER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 10-30-2010; IN COMMERCE 10-30-2010.

**TRADEMARK**
**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LIQUID", APART FROM THE
MARK AS SHOWN.

SN 85-129,960, FILED 9-15-2010.

HOWARD SMIGA, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

> ### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
> ### TRADEMARK REGISTRATION
>
> ### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
> ### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

> ### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
> ### reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the USPTO website for further information.   With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# Exhibit B

## TRADEMARK ASSIGNMENT

WHEREAS, the Estate of Fred Neal, Jr., deceased, owns all right, title and interest in and to the following trademark and U.S. federal trademark registration therefor:

| Mark | Registration No. | Registration Date |
|------|------------------|-------------------|
| Liquid Manna | # 4,339,113 | May 21, 2013 |

WHEREAS, Liquid Manna, LLC, a Texas limited liability company having a principal place of business at PO Box 565, Scottsville, TX 75688, desires to acquire said mark and said registration thereof, together with all of the goodwill of the business associated with the mark and registration, and all past and present claims, benefits, royalties, and license right pertaining to the mark.

NOW, THEREFORE for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Estate of Fred Neal, Jr., by and through its Independent Executor, David Neal, hereby assigns, transfers, and conveys to Liquid Manna, LLC all rights, title and interests in and to the mark and the registration, together with all of the goodwill of the business symbolized by the mark, and any and all other applications and registrations (if any) issuing therefrom and therefor, and together with the right to recover for past infringements thereof.

*David Neal*

Estate of Fred Neal, Jr.,
by David Neal, as Independent Executor of the
Estate of Fred Neal Jr.

Date: 12/15/14

Exhibit C

No. 2014-17,108-CCL

**Estate of**

<u>Fred Neal Jr,</u> **Deceased**

================================

# LETTERS TESTAMENTARY

**TO**

<u>David Neal</u>
**As Independent Executor**

================================

**Issued the**

<u>24th</u> **Day of** <u>November</u>,

<u>2014</u>

**Patsy Cox, County Clerk**

By: _*signature*_
**Lori Hightower, Deputy Clerk**

**County Court**

**Harrison County, Texas**

Exhibit C

# Letters Testamentary

### N O. 2014-17,108-CCL

State of Texas                          In the County Court

County of Harrison                 At Law of Harrison County, Texas

I, the Undersigned Clerk of the County Court of Harrison County, Texas, do hereby certify that on the <u>24th</u> day of A.D. <u>November,</u> <u>2014</u>. David Neal was duly granted by said Court Letters Testamentary of the Estate of Fred Neal Jr Deceased, and that he qualified as Independent Executor of said Estate on the <u>24th</u> day of <u>November,</u> A.D. <u>2014</u>, as the law requires, and that said appointment is still in full force and effect.

Given under my hand and seal of office at Marshall, Texas, the

<u>24th</u> Day of <u>November,</u> A.D. <u>2014</u>

(Seal)                                          Patsy Cox, County Clerk
                                                   Harrison County, Texas

By: _____
Lori Hightower, Deputy Clerk

Reproduction of the form by any person or party is prohibited.