THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LIQUID MANNA, LLC, | § | No. 5:14-CV-1123-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GLN GLOBAL LIGHT NETWORK, | § | |
| LLC and DAVID DARTEZ, | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING MOTION FOR RECONSIDERATION

Before the Court is a Motion for Reconsideration filed by Defendant David Dartez ("Dartez") (Dkt. # 26).  Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the Motion and the supporting memorandum, the Court, for the reasons that follow, **DENIES** Dartez's Motion for Reconsideration.

BACKGROUND

In approximately 2004, Fred Neal, Jr. ("Neal") developed and began selling a product described as "supersaturated oxygen" water.  ("Compl.," Dkt. # 1 ¶ 10.)  Neal marketed the water as having health benefits and sold it directly and through distributors under the name "Liquid Manna."  (Id.)  According to Plaintiff, Neal also extensively used the terms "Royal" and "Regal" in marketing and selling his product, which consumers often refer to as "Regal Liquid Manna."  (Id. ¶ 11.)

1

On May 21, 2013, Neal obtained a trademark registered in his name for the "Liquid Manna" mark.  (Id. ¶ 13 & Ex. A.)

Defendant Global Light Networks, LLC ("GLN"), a company owned and operated by Dartez (collectively, "Defendants"), was one of the largest distributors of Liquid Manna products.  (Id. ¶ 14.)  In the course of their business relationship, Neal and Dartez collaborated to develop and produce Liquid Manna gel pads, which contain oxygen-enhanced gel made using Neal's proprietary technology.  (Id. ¶ 16.)  Plaintiff asserts that Neal did not share the proprietary process with Dartez.  (Id. ¶ 17.)  The gel pads were sold by GLN using the "Liquid Manna" mark.  (Id. ¶ 19.)

Neal died on June 1, 2014.  (Id. ¶ 22.)  Neal's estate assigned the trademark registration for "Liquid Manna" to Plaintiff on December 15, 2014. (Id., Ex. B.)  Plaintiff has continued to manufacture and sell the water and gel pads using Neal's proprietary technology under the Liquid Manna mark.  (Id. ¶ 24.)

Plaintiff alleges that after Neal's death, Dartez and GLN circulated newsletters containing false and disparaging information about the future availability of Liquid Manna products.  (Id. ¶ 25.)  Specifically, Plaintiff alleges that Defendants represented that Liquid Manna would no longer be sold by anyone, that Neal had not shared the proprietary technology used to create the oxygenated water, and that Defendants were capable of reproducing the gel pads.  (Id. ¶ 26.)

2

Defendants further claimed that there was a limited amount of Liquid Manna
product left to sell.  (Id. ¶ 29.)

Plaintiff alleges that Defendants later began to assert that they could
produce Liquid Manna's products using the same process and that Neal had taught
Dartez how to create the oxygenated water and gel pads.  (Id. ¶¶ 30–31.)
According to Plaintiff, Defendants have continued to sell products they claim are
made using Plaintiff's proprietary process and have continued to employ Plaintiff's
"Liquid Manna" mark in connection with products manufactured by Defendants.
(Id. ¶¶ 33–34.)  Additionally, Defendants have begun selling an "oxygen enhanced
water product" using the name "Regal" as its principal mark.  (Id. ¶¶ 36–37.)
Finally, Plaintiff alleges that Defendants advertise a product called "Rad-D-Tox"
using unauthorized and misleading references to Neal and his proprietary process.
(Id. ¶¶ 38–42.)

Plaintiff filed suit against Defendants in this Court on December 22,
2014, alleging causes of action under the Lanham Act for false advertising, false
association, trademark dilution, and trademark infringement.  (Id. ¶¶ 43–64,
84–97.)  Plaintiff's Complaint also alleges claims for injury to business reputation
under the Texas Business and Commerce Code, as well as common law business
disparagement, defamation, and unfair competition.  (Id. ¶¶ 65–83.)

On April 2, 2015, Dartez filed a Motion to Dismiss.[1]  (Dkt. # 10.) Following a hearing, the Court issued an Order denying Dartez's Motion to Dismiss on July 2, 2015.  (Dkt. # 23.)  On July 30, 2015, Dartez filed the instant Motion for Reconsideration.  (Dkt. # 26.)  Plaintiff has not filed a response.

<u>LEGAL STANDARD</u>

"While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order."  <u>Shepherd v. Int'l Paper Co.</u>, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Whether a motion is considered under Rule 59(e) or Rule 60(b) depends on when it was filed.  <u>See id.</u>  A motion filed within 28 days of the judgment or order of which the party complains is considered a motion brought under Rule 59(e). <u>Williams v. Thaler</u>, 602 F.3d 291, 303 & n.7 (5th Cir. 2010); <u>see also</u> Fed. R. Civ. P. 59(e).  Here, Dartez filed his Motion for Reconsideration 28 days after entry of the Court's Order denying his Motion to Dismiss, and the Court will therefore consider the Motion under Rule 59.

Federal Rule of Civil Procedure 59(e) permits a litigant to challenge the correctness of a judgment.  Three rationales can support a motion to alter or

---

[1] While Dartez has entered an appearance in this case, representing himself pro se, GLN has not.  On April 20, 2015, Plaintiff moved for an entry of default against GLN, which was entered by the clerk on the same date.  (Dkt. ## 13, 14.)  As of the date of this Order, GLN remains in default.

amend under Rule 59(e): (1) the judgment exhibits "a manifest error of law or fact"; (2) the litigant wishes to present newly discovered evidence; or (3) "there has been an intervening change in the controlling law." <u>Schiller v. Physicians Res. Grp. Inc.</u>, 342 F.3d 563, 567 (5th Cir. 2003) (quoting <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 863–64 (5th Cir. 2003)).  "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" <u>Guy v. Crown Equip. Corp.</u>, 394 F.3d 320, 325 (5th Cir. 2004).  Accordingly, a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," and instead is an "extraordinary remedy that should be used sparingly." <u>Templet v. HydroChem Inc.</u>, 367 F.3d 476, 479 (5th Cir. 2004).

<u>DISCUSSION</u>

Dartez's Motion for Reconsideration is not based on newly discovered evidence or an intervening change in the controlling law.  Dartez instead argues that the Court erred in denying his Motion to Dismiss because (1) Defendants' use of "Regal+" and "Royal" does not infringe on Plaintiff's "Liquid Manna" mark; (2) Plaintiff has not specifically alleged that the products sold by Defendants using the allegedly infringing marks were Defendants' products; (3) the statements allegedly made by Defendants are not actionable; (4) Plaintiff failed to allege that Dartez, rather than GLN, committed any trademark violations; and (5) dismissal of

5

Plaintiff's federal claims requires dismissal of the Plaintiff's state law claims.  All of these arguments were raised or could have been raised in Dartez's Motion to Dismiss, and thus are not a proper basis for his Motion for Reconsideration. Templet, 367 F.3d at 479.  The Court will nevertheless briefly address each.

First, Dartez's argument that Plaintiff's statutory trademark infringement claims should be dismissed because "Regal+" and "Royal" do not infringe on Plaintiff's "Liquid Manna" mark is without merit.  Plaintiff's claims for trademark dilution, trademark infringement, and trademark counterfeiting under the Lanham Act are all based on Plaintiff's allegations that Defendants used Plaintiff's "Liquid Manna" mark, not Plaintiff's claimed common law marks. (Compl. ¶¶ 84–98, 105–07.)  Plaintiff's allegations regarding Defendants' alleged use of the "Regal" and "Royal" marks support Plaintiff's claim for common law trademark infringement, not its statutory claims for trademark dilution, infringement, and counterfeiting.  (Compl. ¶¶ 99–102.)  Dartez's argument thus provides no basis for dismissing Plaintiff's statutory trademark claims.

Second, Plaintiff has adequately alleged its statutory trademark claims against Defendants.  Dartez argues that Plaintiff failed to allege that the infringing use of Plaintiff's marks was used in connection with Defendants' products, rather than with Defendants' sale of Plaintiff's own goods.  This argument is frivolous. Plaintiff alleges that "Defendants, without authorization or license, continue to use

the trademarked term 'Liquid Manna TM' logo on their website in connection with products that Defendants manufacture and that are deceptively similar to products manufactured and distributed by (or authorized by) Plaintiff."  (Compl. ¶ 33.) Plaintiff further alleges that Defendants' use of the "Liquid Manna" mark "in its online product descriptions, images, and advertisements" was "unauthorized," and provides two pictures of products containing allegedly infringing uses of the mark. (Compl. ¶ 86.)  These allegations are more than sufficient to plausibly allege that Defendants used Plaintiff's registered mark without Plaintiff's authorization in marketing and selling Defendants' products.

Dartez's third argument is that Defendants' alleged statements regarding Plaintiff's products are not actionable.  Plaintiff alleges that "[u]pon Neal's death Defendants circulated newsletters to the public (and specifically the target consumer group) that contained false and disparaging information about the future availability of Liquid Manna water and gel pad products."  (Compl. ¶ 25.) Plaintiff alleges that Defendants specifically stated that (1) Neal had not shared the technology used to create his products with anyone, (2) Liquid Manna would no longer be sold by anyone, and (3) Neal taught Defendants how to manufacture the products and Defendants were capable of reproducing them.  (Id. ¶ 26.)  Plaintiff further alleges that after Defendants were informed that Plaintiff had the technology to create Liquid Manna Products and intended to continue

manufacturing and selling the products using the "Liquid Manna" mark,
"Defendants continued to publish false statements" and "claimed or implied there
was a limited amount of Liquid Manna stock left to sell in the world." (Id. ¶¶ 28–
29.) Plaintiff alleges that Defendants subsequently "published a newsletter stating,
falsely, that Neal had, in fact, taught Dartez the proprietary technology" used to
create Plaintiff's products. (Id. ¶ 31.) Dartez contends that these alleged
statements are not disparaging, and that Dartez did not know that they were
inaccurate.

       The alleged statements form the basis for Plaintiff's claims for false
advertising under 15 U.S.C. § 1125, business disparagement, and defamation. To
state a claim for false advertising under the Lanham Act, a plaintiff must allege:

> (1) that the defendant made a false statement of fact about its product
> in a commercial advertisement; (2) that the statement actually
> deceived or has a tendency to deceive a substantial segment of its
> audience; (3) the deception is likely to influence the purchasing
> decision; (4) the defendant caused the false statement to enter
> interstate commerce; and (5) the plaintiff has been or is likely to be
> injured as a result.

Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 462 (5th Cir.
2001). This cause of action does not require that the defendant knew the statement
was false. Additionally, the disparaging nature of the alleged statements is clear—
they imply that Plaintiff was going out of business and that Defendants were

prepared to take Plaintiff's place in the market.  Dartez's argument therefore provides no basis for dismissing Plaintiff's false advertising claim.

"To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 170 (Tex. 2003).  "[A] business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion.'" Id. (emphasis omitted) (quoting Restatement 2d of Torts § 623A, cmt. g (1977)).

The related claim of defamation requires that the plaintiff allege that the defendant "(1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with either actual malice, if the plaintiff is a public official or a public figure, or negligence, if the plaintiff is a private individual, regarding the truth of the statement." In re Lipsky, 411 S.W.3d 530, 543 (Tex. App. 2013).  "A statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Id. "The two torts differ in that defamation actions chiefly serve to protect the personal

reputation of an injured party, while a business disparagement claim protects economic interests." <u>Forbes Inc.</u>, 124 S.W.3d at 170.

Here, Plaintiff's allegations are sufficient to state plausible claims for business disparagement and defamation. Plaintiff alleges that Defendants published on their website and in their newsletter information regarding Plaintiff's products that Defendants knew to be false—specifically, that Liquid Manna products would be discontinued following Neal's death, that Neal had not shared the technology used to create the products, and that Defendants were capable of reproducing the products. (Compl. ¶¶ 25–27, 70–80.) Plaintiff further alleges that Defendants publicly asserted that there was a limited amount of Liquid Manna products left in the world after being informed that Plaintiff would continue manufacturing and selling the products, and that they falsely stated that Neal had taught Dartez how to manufacture the products. (<u>Id.</u> ¶¶ 29, 31.) Plaintiff alleges that Defendants' statements disparaged Plaintiff "by implying that Plaintiff was no longer producing its enhanced water products, and/or that Plaintiff was not producing its enhanced water products to the same standard as before Neal's death." (<u>Id.</u> ¶ 70.) Finally, Plaintiff alleges that Defendants compete with Plaintiff, are familiar with Plaintiff's business, and published the false statements to unfairly gain a competitive advantage and with the intent to interfere with Plaintiff's business interests. (<u>Id.</u> ¶ 71.) These allegations, taken as true, establish

plausible claims for business disparagement and defamation under Texas law, and Dartez is therefore not entitled to dismissal of these claims.

Dartez's fourth argument is that Plaintiff failed to allege the Dartez, rather than GLN, committed any trademark infringement. This argument is also without merit. As noted in the Court's Order, Plaintiff's Complaint, which refers to Dartez and GLN collectively as "Defendants," asserts that Dartez and GLN each engaged in the conduct alleged, and are thus each liable on the stated causes of action. (Dkt. # 23 at 6.) Plaintiff's allegations throughout the Complaint are asserted against both Dartez individually and GLN, and Dartez's argument is without basis.

Finally, because Plaintiff has alleged sufficient factual material to state plausible claims for relief under the Lanham Act, the Court need not dismiss Plaintiff's state law claims under 28 U.S.C. § 1367(c). In sum, Dartez has not identified any plain and indisputable error of law or fact in the Court's Order denying his Motion to Dismiss, and he is therefore not entitled to relief under Rule 59(e).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Dartez's Motion for Reconsideration (Dkt. # 26.)

11

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, October 29, 2015.

_____
David Alan Ezra
Senior United States Distict Judge