IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LIQUID MANNA, LLC, | § | No. 5:14−CV−1123-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GLN GLOBAL LIGHT NETWORK, LLC and DAVID DARTEZ, | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment against David Dartez ("Defendant") filed by Liquid Manna, LLC, ("Plaintiff"). (Dkt. # 44.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After considering the memorandum filed in support of the Motion[1], the Court, for the reasons that follow, **DENIES** the Motion for Summary Judgment (Dkt. # 44.)

BACKGROUND

In 2004, Fred Neal Jr. ("Neal") developed a proprietary process for creating what he described as "supersaturated oxygen" water. (Dkt. # 1 ¶ 10.) Neal began marketing the product as Regal Liquid Manna. (Id. ¶ 11.) In May

---

[1] Defendant, who is proceeding pro se, has not filed a Response in opposition to the Motion for Summary Judgment.

1

2013, the United States Patent and Trademark Office issued Neal a trademark for the phrase "Liquid Manna" to be associated with his oxygen enhanced water. (Id. Ex. A.)

Neal used Defendant GLN Global Light Network, LLC ("GLN") as one of his largest distributers of Liquid Manna water. (Id. ¶ 14.) Defendant Dartez owns and operates GLN. At some point, Neal and Defendant Dartez collaborated on a product involving gel pads that utilized Neal's proprietary process to charge the gel pads with oxygen. (Id. ¶ 16.) However, Neal never shared the proprietary process with Dartez. (Id. ¶ 18.)

Neal passed away on June 1, 2014, leaving his estate, including the rights to Liquid Manna products, to his children, Sherrie Shields and David Neal, who subsequently transferred their rights to Liquid Manna LLC. (Dkt. # 1 ¶ 22; Id. Ex. B.) Neal's children continue to operate the Liquid Manna business, selling the oxygen-enhanced water and gel pads and marketing them under the Liquid Manna brand. (Id. ¶ 24.)

However, following Neal's death, GLN began circulating false information concerning the future availability of the Liquid Manna products. (Id.) Specifically, Defendants represented that Liquid Manna would no longer be sold by anyone, that Neal had not shared the proprietary technology used to create the

oxygenated water, but that Defendants were capable of reproducing the gel pads. (Id. ¶ 26.)

However, GLN subsequently began asserting that they could produce Liquid Manna's products—oxygenated water and gel pads—using the same process that Neal had allegedly taught Dartez. (Id. ¶¶ 31−32.) Defendants also began using Neal's name and trademark to sell Liquid Manna products without authorization. (Id. ¶ 34.) Further, Defendants continue to manufacture, distribute, and sell similar products using the trademark Liquid Manna without Plaintiff's permission. (Dkt. # 1 ¶ 34.)

On December 22, 2014, Plaintiff filed this lawsuit pursuant to the U.S. Trademark Act ("the Lanham Act"), codified as 15 U.S.C. § 1125 for trademark infringement, trademark counterfeiting, false advertising, false association, trademark dilution, common law trademark infringement, and under Texas law for injury to business reputation, trademark dilution, business disparagement, defamation, unfair competition, and common law unjust enrichment against GLN and David Dartez. (Dkt. # 1.)

On March 14, 2015, the Court issued an order granting default judgment against GLN on five claims: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) common law trademark infringement; (3) false advertising in violation of 15 U.S.C. § 1125; (4) false association in violation of 15 U.S.C.

3

§ 1125; and (5) trademark counterfeiting in violation of 15 U.S.C. 1114(1)(a). (Dkt. # 35.) The Court awarded $17,462.49 in attorney's fees and enjoined Defendants from inter alia, selling Plaintiff's Liquid Manna product. (Id.)

On May 25, 2016, the Court held a hearing on the issue of damages at which Defendant Dartez did not appear. (Dkt. # 39.) On May 31, 2016, the Court issued an order awarding Plaintiff $73,357.74 against GLN, and to pay an additional $2,771.03 in attorney's fees. (Dkt. # 42.)

On July 7, 2016, Plaintiff filed a Motion for Summary Judgment against Defendant Dartez. (Dkt. # 44.) Defendant has not filed a Response in opposition to the Motion.

## LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). "Substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

Since judgment has already been entered against GLN Global Light Network, LLC, Plaintiff seeks to pierce the corporate veil and impose individual liability on Defendant Dartez through an "alter ego" theory.

"There are three broad theories of corporate disregard" under Texas law. S.E.C. v. Res. Dev. Intern., LLC, 487 F.3d 295, 302 (5th Cir. 2007). "The corporate veil is pierced when: (1) the corporation is the alter ego of its owners or shareholders; (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud." Id. Under the first theory, "[a]lter ego applies when there is such unity between the corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." Id. (quoting Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986), superseded by statute on other grounds recognized by SSP Partners v. Gladstrong Inv. (USA) Corp., 275 S.W.3d 444, 455 (Tex. 2009)). Alter ego is shown from:

(1) the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately;

(2) the amount of financial interest, ownership and control the individual maintains over the corporation; and

(3) whether the corporation has been used for personal purposes.

See Castleberry, 721 S.W.2d at 272. Under Texas law, "factual disputes related to the bases for alter ego liability, like factual disputes generally, are for the jury." Phillips v. Carlton Energy Grp., LLC, 475 S.W.3d 265, 286 (Tex. 2015). However, "when the facts are not disputed, whether an imposition of alter ego liability is justified is a matter of law for the court." Id.

Here, Plaintiff has failed to present sufficient evidence to show that Defendant Dartez is the alter ego of GLN. Plaintiff relies almost exclusively on two pieces of evidence to support his alter ego theory. First, Plaintiff provides a special warranty deed showing that on December 16, 2004, David Dartez sold property known as "Lot 2, MYERS RIDGE" located in Comal County, Texas to GLN, a Nevada entity, for $10.00. (Dkt. # 44-2 at 64−65.) Second, Plaintiff has submitted a second special warranty deed showing that on March 12, 2008, GLN sold "Lot 2, MYERS RIDGE" to New Life Group, LLC, a Florida entity, for $10.00. (Dkt. # 44-2 at 66−67.) Defendant Dartez signed the second deed as CEO of GLN. (Id.) Plaintiff presents no other proper summary judgment evidence indicating that Dartez is the alter ego of GLN.

Instead, Plaintiff only makes allegations unsupported by evidence. First, Plaintiff alleges that Dartez created two corporate entities within 48 hours of being served process in this lawsuit: Global Light Network, LLC, a Delaware entity; and (2) an irrevocable trust under Delaware law. (Dkt. 44 ¶ 4(c).) Second, Plaintiff alleges that Dartez transferred his residence[2] from New Life Group, LLC to the Delaware irrevocable trust by way of quit claim deed. (Id. ¶ 4(d).) Finally, Plaintiff alleges that Dartez used the irrevocable trust to obtain a Canadian

---

[2] Plaintiff also alleges that Dartez's residence is the same as the "Lot 2" sold in the special warranty deeds. However, Plaintiff has provided no evidence that the two are the same.

mortgage for $65,000.  (Id. ¶ 4(e).)  For each of these allegations, Plaintiff has submitted no evidence to show that the allegation is true.

In failing to submit evidence of these allegations, Plaintiff has failed to show that the total dealings of GLN and Dartez results in a finding that Dartez is the alter ego of GLN.  Plaintiff has only shown that Dartez was the CEO of GLN, but has failed to present any evidence of his financial interest in and ownership of the corporation.  Further, Plaintiff has only alleged that Dartez used GLN for his personal purposes, but fails to proffer any proper summary judgment evidence to that end.  Instead, Plaintiff has established only that Dartez sold real property to GLN, and that while acting as GLN's CEO, Dartez transferred that same real property to New Life Group, LLC.  Importantly, Plaintiff also alleges that the transferred real property is Dartez's residence, but fails to offer any summary judgment proof that the two are the same.  Therefore, these real property transfers appear to be legally permissible, and do not show "such unity between the corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice."  Castleberry, 721 S.W.2d at 272.  Accordingly, Plaintiff has failed to meet his burden of demonstrating the absence of a genuine issue of material fact that Dartez is the alter ego of GLN.  Since "factual disputes related to the bases for alter ego liability

8

. . . are for the jury," <u>Phillips</u>, 475 S.W.3d at 286, Plaintiff may only impose individual liability on Dartez by trial.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiff's Motion for Summary.  (Dkt. # 44.)  The hearing for October 20, 2016, is **CANCELED.**

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, August 19, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE